**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Leon RIVAS VELAZQUEZ,

     *Petitioner,*

v.

Raul MALDONADO JR., Warden,
Metropolitan Detention Center; Judith
ALMODOVAR, New York Field Office
Director for U.S. Immigration and Customs
Enforcement; Todd BLANCHE, Acting
Attorney General of the United States;
Markwayne MULLIN, Secretary of
Homeland Security; and Todd M. LYONS,
Acting Director, U.S. Immigration and
Customs Enforcement,

     *Respondents.*

Civil Action No. _____


EMERGENCY PETITION
FOR WRIT OF
HABEAS CORPUS

Petitioner brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the All Writs Act, 28 U.S.C. § 1651, and Article I, Section 9, of the Constitution of the United States. Petitioner alleges in support of his petition:

## PRELIMINARY STATEMENT

1.      Petitioner Leon Rivas Velazquez is in the physical custody of Respondents at the Metropolitan Detention Center in Brooklyn, New York. He has been detained unlawfully because the Department of Homeland Security ("DHS") and the Executive Office of Immigration Review ("EOIR") have concluded that he is subject to mandatory detention.

2.      Petitioner is charged with, *inter alia*, having entered the United States without admission or inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

3.      Based on this allegation in Petitioner's removal proceedings, DHS denied Petitioner release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without admission or inspection—to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

4.      Similarly, on September 5, 2025, the Board of Immigration Appeals ("BIA" or "Board") issued a precedential decision, binding on all immigration judges, holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

5.      But as the Second Circuit recently held, § 1225(b)(2)(A) does not apply to individuals, like Petitioner, "who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026). Instead, such individuals are subject to detention under a different statute, 8 U.S.C. 1226(a), that allows for release on conditional parole or bond, and requires an individualized determination of the basis for detention upon arrest. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

6.      Petitioner's confinement is unlawful—as confirmed by a cascade of decisions, including within this District and now confirmed by the Second Circuit, that have rejected Respondents' interpretation of Section 1225(b)(2). Accordingly, Petitioner brings this petition seeking immediate and unconditional release.

7.      Petitioner also asks this Court to enjoin his transfer outside this District. *Local 1814, Intern. Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1237 (2d Cir. 1992) ("Once the district court acquires jurisdiction over the subject matter of, and the parties to, the litigation, the All Writs Act [28 U.S.C. § 1651] authorizes a federal court to protect that jurisdiction" (cleaned up)); *Perez y Perez v. Noem*, 25 Civ. 4828 (DEH), 2025 WL 1908284, at *2 (S.D.N.Y. June 13, 2025).

8.      Alternatively, Petitioner respectfully asks the Court to issue an order to show cause and hold a hearing pursuant to 28 U.S.C. § 2243 on the expedited basis set forth in the statute, during which the Court should (1) find that Petitioner's detention violates federal law and (2) order his release.

2

## PARTIES

9.      Petitioner Leon RIVAS VELAZQUEZ is alleged to be a citizen of Mexico who has resided in the United States since 2007. He has been in immigration detention since February 26, 2026 and is unable to obtain review of his custody by an immigration judge, pursuant to the Board's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

10.     Respondent Raul MALDONADO JR. is named in his official capacity as the Warden of the Metropolitan Detention Center.

11.     Respondent Judith ALMODOVAR is named in her official capacity as the Field Office Director for ICE's New York Field Office. She is responsible for the administration of immigration laws and the execution of detention warrants and removal orders.

12.     Respondent TODD BLANCHE is named in his official capacity as the Acting Attorney General of the United States. He is responsible for the policies and operations of the DOJ.

13.     Respondent MARKWAYNE MULLIN is named in his official capacity as the Secretary of DHS. He directs each of the component agencies within DHS, including ICE.

14.     Respondent TODD M. LYONS is named in his official capacity as Acting Director of ICE. He directs ICE operations and is responsible for the administration of the immigration laws.

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1331 (federal question); Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause); and 28 U.S.C. § 1651 (All Writs Act).

3

16. The federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the lawfulness of their detention by DHS. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

17. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue is proper in this District under 28 U.S.C. § 2241 and 28 U.S.C. § 1391. Petitioner is incarcerated at the Metropolitan Detention Center, within this District; the ICE office that controls the location of his detention is based in New York City; and a substantial part of the events giving rise to the claims and relevant facts occurred in this District.

## EXHAUSTION

18. Petitioner is not required to exhaust administrative remedies because doing so would be futile.

19. Exhaustion of administrative remedies in immigration detention cases is considered a prudential concern, rather than a statutory requirement. *Quintanilla v. Decker*, No. 21 Civ. 417 (GBD), 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021) (citing *Joseph v. Decker*, No. 18 Civ. 2640 (RA), 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018)).

20. Such exhaustion may be excused when any of the following apply: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

21. Petitioner's case meets every requirement. Not only will he face irreparable injury if his detention continues, and not only does his petition raise substantial constitutional questions,

4

but intervening events have rendered administrative appeal futile and unable to provide a genuine opportunity for adequate relief.

22.     On September 5, 2025, the Board decided *Matter of Yajure Hurtado*, a precedential decision finding that all noncitizens who, like Petitioner, have not been admitted to the United States are *per se* ineligible for bond, even if they are neither a danger nor a flight risk. 29 I. & N. Dec. 216 (BIA 2025). Thus, the BIA will be bound to find that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and deny his release. This is true although the Second Circuit, and the overwhelming majority of district courts in the country that have heard a challenge to this reading of the statute, have rejected it out of hand.

### STATEMENT OF FACTS

23.     Petitioner has resided in the United States for nearly 20 years, since entering without inspection in 2007.

24.     In the United States, Petitioner has worked in construction, gaining extensive experience in multiple building trades. Through his work, he has earned great respect from many of his former clients and business partners in the real estate and construction industries.

25.     Petitioner has two U.S.-citizen children, a thirteen-year-old daughter and a ten-year-old son. His ten-year-old son has special needs.

26.     In 2023, Petitioner separated from his longtime partner. During this difficult period for Petitioner, he drove while under the influence of alcohol and collided with a parked car in Nassau County, New York. No one was injured, but Petitioner was charged with driving while intoxicated ("DWI") and driving without a license. This was Petitioner's first DWI charge. In 2024, Petitioner took responsibility for his actions, pleaded guilty, and was sentenced to three years of probation and a fine by the Nassau County District Court. In the wake of this incident, Petitioner

voluntarily completed an alcohol rehabilitation program. Petitioner has paid the assessed fine and cooperated with the requirements of his probation.

27.    On February 26, 2026, Petitioner was arrested by ICE while attending a regularly scheduled check-in with his Nassau County probation officer. Petitioner is now detained at the Metropolitan Detention Center in Brooklyn.

28.    DHS placed Petitioner in removal proceedings before the New York-Varick Street pursuant to 8 U.S.C. § 1229a. ICE has charged Petitioner with, *inter alia*, being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.

29.    Petitioner is neither a flight risk nor a danger to the community. He has extensive professional and personal ties to the New York metropolitan area, including a successful construction career in the region and U.S. citizen children who reside in the area. He has taken full responsibility for his 2023 DWI charge and has worked diligently to fulfill his court-ordered obligations and ensure that a similar incident does not occur in the future.

30.    Despite these factors weighing in favor of bond, pursuant to *Matter of Yajure Hurtado*, the immigration judge is unable to consider Petitioner's bond request.

31.    As a result, Petitioner remains in detention. Without relief from this court, he faces the prospect of months, or even years, in immigration custody, separated from his family (including his special needs son) and community.

## LEGAL BACKGROUND

### Immigration Detention Framework

32.    The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

6

33.     First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

34.     Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

35.     Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

36.     This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

37.     Detention under Section 1226(a) is discretionary, not mandatory; the government "may release the [noncitizen] on—(A) a bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole[.]" 8 U.S.C.§ 1226(a)(2)(A)–(B).20.

38.     Under the Section 1226 framework, release is appropriate where a noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). *See Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020) ("8 U.S.C. § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination"); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025). If, after an individualized consideration, ICE chooses to detain the noncitizen pursuant to

Section 1226(a) pending removal proceedings, the individual may ask for a bond redetermination hearing before the immigration judge. 8 C.F.R. §1003.19.

39.     In contrast with Section 1226, which applies to "certain [noncitizens] already in the country," *Jennings v. Rodriguez*, 583 U.S.281, 289 (2018) (emphasis added), Section 1225(b) governs detention of noncitizens seeking entry into the United States (i.e., "applicants for admission"). In other words, Section 1225(b) mandates detention for those noncitizens subject to it, and they are not eligible to be considered for release.

40.     Section 1225(b)(2)(A) applies to a narrower subset of applicants for admission.  It provides that, "if the examining officer determines that a[] [noncitizen] *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall be detained* for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).

41.     For decades after the enactment of detention provisions at § 1226(a) and § 1225(b)(2), people who entered the country without inspection but who were already in the United States at the time of an ICE arrest were detained under § 1226(a) rather than § 1225(b)(2). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). As the Supreme Court has made clear, "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" *Jennings*, 583 U.S. at 287-89.

42.     On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy[1]  that rejected well-established understanding of the statutory framework and reversed decades of

---

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

8

practice. The policy claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A), regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

43.    On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

44.    Since Respondents adopted their new policy, "over ninety percent of district court judges" have "rejected the government's position." *Cunha*, 2026 WL 1146044. *See also Rodriguez,* 2025 WL 2782499, at *1 (collecting cases and noting that innumerable district courts "ha[ve] concluded that the government's [new] position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.");[2] *see also Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025) (finding that the government cannot point to an Article III court that has adopted their expansive

---

[2] *See*, *e.g., Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025); *Aceros, v. Kaiser, et al.*, 25-CV-06924 (EMC), 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112 (D. Nev. 2025); *Romero v. Hyde*, 795 F. Supp. 3d 271 (D. Mass. 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Maldonado v. Olson*, 795 F. Supp. 3d 1134 (D. Minn. 2025); *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231 (D.N.M. 2025); *Beltran Barrera v. Tindall*, 3:25-CV-541 (RGJ), 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025); *Jimenez v. FCI Berlin, Warden,* 799 F. Supp. 3d 59 (D.N.H. 2025); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247 (D. Me. 2025).

construction of § 1225(b)(2)); *Artiga v. Genalo*, No. 25-CV-5208 (OEM), 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025) (same).

45.    Courts have rejected DHS's and EOIR's new interpretation because it defies the INA. The government's recently adopted position also ignores the text of § 1225(b)(2). For § 1225(b)(2) to apply, an examining immigration officer must make three separate determinations: that a person is 1) an applicant for admission; 2) seeking admission; and 3) not clearly and beyond a doubt entitled to be admitted. Section 1225(a)(1) defines an "applicant for admission" as [a noncitizen] present in the United States who has not been admitted or who arrives in the United States."  As the Second Circuit explained, "[t]he term "seeking" is in the present participle form, which expresses present action. *Cunha*,  2026 WL 1146044, at *6.  The government's interpretation that all inadmissible individuals are "seeking admission" within the meaning of § 1225(b) renders the meaning of the term identical to the statutorily defined term "applicant for admission." Such an interpretation violates the rule of surplusage and negates the plain meaning of text. *Id*. at *6.

46.    The legislative history further shows that § 1226(a) was intended to "restate[] the [then-]current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025) (quoting H.R. Rep. No. 104-469, at 229 (1996)). Indeed, shortly after IIRIRA's enactment, the former Immigration and Naturalization Service and the Executive Office for Immigration Review ("EOIR," which houses the Immigration Courts and BIA) issued an interim rule to implement the statute that expressly stated: "Despite being applicants for admission, aliens who are present without having been admitted or paroled

(formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

47.    Thus, for almost 30 years, all participants in the immigration system have understood that people arrested inside the United States generally fall within § 1226 for detention purposes and therefore, unless subject to bars not applicable here, are required to receive a bond hearing upon request—even if they initially entered the country without permission. Such a longstanding and consistent interpretation "is powerful evidence that interpreting the Act in [this] way is natural and reasonable." *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting); *see also Bankamerica Corp. v. United States*, 462 U.S. 122, 130 (1983) (relying in part on "over 60 years" of government interpretation and practice to reject government's new proposed interpretation of the law at issue). As the Second Circuit noted, "the fact that the Executive Branch has for nearly three decades acted inconsistently with the newfound interpretation strongly counsels against adopting it." *Cunha*, 2026 WL 1146044, at *19.

48.    The Laken Riley Act amendments to § 1226 that occurred just last year, § 119, 139 Stat. 3, also confirmed widespread understanding that individuals not admitted or paroled were still detained pursuant to § 1226(a) if they were detained while already in the United States. Congress expressly included inadmissible individuals who have been convicted of certain crimes as subject to mandatory detention under § 1226(c)(1)(E). Again, if every noncitizen who was present without being admitted was already subject to mandatory detention under § 1225(b)(2), Congress would have had no reason to pass an entirely new provision in order to make those individual subject to mandatory detention under § 1226(c)(1)(E) if they committed one of the listed crimes. *See Cunha*, 2026 WL 1146044, at *17 (finding that the government's reading would render this provision "superfluous").

49.     Petitioner was arrested after nearly twenty years of continuous presence in the United States, not while "seeking admission."

50.     Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.  Petitioner's detention is governed by § 1226(a), and his continued detention under § 1225(b)(2) is in excess of statutory authority and *ultra vires.*

**Noncitizens' Procedural Due Process Rights**

51.     The Due Process Clause of the Fifth Amendment entitles noncitizens to due process of law.  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  As clearly enunciated by the Supreme Court, the protection of the Due Process Clause applies to noncitizens in the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001) (citations omitted).

52.     Stated simply, "while [DHS] might want to enforce this country's immigration laws efficiently, it cannot do that at the expense of fairness and due process." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 144 (W.D.N.Y. 2025) (citing *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954)).

53.     Further, noncitizens are entitled to procedural due process protections, even in the face of policy shifts between administrations.  While a "new administration can change the rules . . . it cannot change them and make up new rules as it goes along when the new rules abridge constitutional rights." *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 149 (W.D.N.Y. 2025).

54.     In the context of immigration detention due process claims, the Second Circuit has applied the three-factor balancing test set forth in *Mathews v. Eldridge* to determine what due process requires. These factors are: (i) "the private interest that will be affected by the official

action"; (ii) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020).

55.     In light of a noncitizen's due process rights and the procedural rights conferred by Section 1226(a) and the implementing regulations, a decision to detain a noncitizen requires an individualized determination as to the noncitizen's risk of flight and danger to the community. *See Velesaca v. Decker*, No. 20-CV-1803, 458 F. Supp. 3d 224, 235 (S.D.N.Y. 2020); *Lopez Benitez*, 795 F. Supp. at 495; *Kelly v. Almodovar*, No. 25-CV-6448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025).

56.     Under the *Mathews* rubric, freedom from imprisonment, physical restraint, or other forms of government custody is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Lopez Benitez*, 795 F. Supp. at 492 ("[Petitioner] invokes the most significant liberty interest there is—the interest in being free from imprisonment") (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)) (citing *Hamdi*, 542 U.S. at 529); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. Nov. 22, 2019) (noncitizens in immigration custody had an arguably even greater liberty interest in remaining out of detention than criminal parolees who required due process protection).

57.     With respect to the second *Mathews* factor, given the strong liberty interest at stake, the Fifth Amendment's guarantee of due process requires at least some notice and an opportunity to be heard before a person can be placed in immigration detention. *Trump v. J.G.G.*, 604 U.S.

13

670, 673 (2025).  Further, due process requires that "notice must be afforded within a reasonable time and in such a manner as will allow [noncitizens] to actually seek . . . relief[.]" *Id.*

58.    For the third *Mathews* factor, "the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate government purpose." *Velasco Lopez*, 978 F.3d at 854.  The recognized government interests in immigration detention are "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.  Absent evidence in the record that a noncitizen is dangerous, and in situations when the noncitizen has appeared for immigration proceedings, district courts have held that the government cannot demonstrate a significant interest in their detention.  *See Lopez Benitez*, 795 F. Supp. at 496; *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218–19 (S.D.N.Y. 2025).

59.    Recent decisions by federal courts in various jurisdictions confirm that due process requires the government to make individualized determinations to detain noncitizens and give them notice and a meaningful opportunity to be heard when challenging their detention. Further, if a noncitizen does not receive individualized consideration pre-deprivation, his due process rights are irrevocably violated, and no amount of procedure provided post-detention can remedy that violation. *See, e.g.*, *Lopez Benitez*, 795 F. Supp. at 497 ("Given the nature of the constitutional violation Mr. Lopez Benitez sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment before detaining him—any post-deprivation review by an immigration judge would be inadequate."); *see also Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (finding bond "hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause.") (citation modified); *Kelly*, 2025 WL 2381591, at *3 (same).

14

60.     As a result, courts have ordered a noncitizen's immediate release where their pre-detention due process rights have been violated. Here, immediate release is appropriate because Respondents have not—and cannot—show that they conducted an individualized determination regarding Petitioner. *Cuy Comes v. DeLeon*, No. 25 CIV. 9283 (AT), 2025 WL 3206491, at \*6 (S.D.N.Y. Nov. 14, 2025) (ordering immediate release where petitioner's first encounter with ICE was a detention without an individualized determination); *Perez Velasquez v. Noem*, No. 25 CIV. 10338 (AT), 2025 WL 3707526, at \*4 (S.D.N.Y. Dec. 22, 2025) (same); *Campos v. Deleon*, No. 25-CV-10099 (LJL), 2025 WL 3514120, at \*2 (S.D.N.Y. Dec. 8, 2025) (collecting cases).

61.     Respondents' reliance on Section 1225(b)(2)'s mandatory detention provision establishes their decision to forgo any evaluation of whether Petitioner's circumstances would otherwise warrant detention under Section 1226, which provides the sole lawful authority for detaining individuals residing in the U.S.

62.     "It is clear, not only from the language of [28 U.S.C.] §§ 2241(c)(3) and 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (ordering release where detention became unlawful once condition release date had passed); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy [for unlawful detention] is, of course, release.") (citation omitted).

63.     No procedural alternative to release can serve as an effective remedy. *See, e.g., Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at \*31 (E.D.N.Y. Nov. 28, 2025) (ordering release and explaining that "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because

15

the detention without adequate pre-deprivation procedures has already been carried out."); *Tumba v. Francis*, No. 25-cv-8110 (LJL), 2025 WL 3079014, at *8-9 (S.D.N.Y. Nov. 4, 2025) (ordering release); *Hyppolite*, 2025 WL 2829511, at *16 (same). Petitioner's detention was unlawful from the moment he was detained and then taken into custody. Respondents afforded him no process before detention and have baselessly asserted authority to subject him to mandatory detention. Immediate release is the appropriate remedy.

64.     In the alternative, Petitioner seeks at a minimum a bond hearing at which Respondents bear the burden of justifying his continued detention by clear and convincing evidence. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Although he submits this is insufficient to vindicate the immense due-process violation inherent in his detention, a bond hearing is a mechanism to mitigate his continued unlawful confinement.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:

### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C. § 1226(a) and 8 U.S.C. § 1226(a)

65.    Petitioner realleges and incorporates by reference each and every allegation contained above.

66.    The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the interior of the United States.

67.    Petitioner is detained under § 1226(a), as reflected by DHS's own documents, binding law, and longstanding historical practice. Yet DHS contends, following BIA caselaw, that Petitioner is subject to mandatory detention under § 1225(b)(2).

68.    Section 1226(a) requires an individualized, pre-deprivation determination that a noncitizen whom Respondents intend to detain presents a danger or a flight risk.

69.    ICE did not conduct an individualized determination of the propriety of Petition's detention before it detained him.

70.    The application of §1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

17

## SECOND CAUSE OF ACTION:

## ICE'S FAILURE TO EXERCISE ITS DISCRETION VIOLATES DUE PROCESS
## U.S. CONST. AMEND. V

71. Petitioner realleges and incorporates by reference each and every allegation contained above.

72. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

73. In assessing whether a person has been deprived of the right to procedural due process, courts weigh the factors from *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

74. Here, all three factors weigh in favor of finding that Respondents have violated Petitioner's right to procedural due process by asserting unlawful authority to subject him to mandatory detention, by affording Petitioner no process upon detention, and by providing Petitioner no way to meaningfully contest his unlawful detention.

18

## THIRD CAUSE OF ACTION:

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT,
### 5 U.S.C. § 706(2)(A)

75.     Petitioner realleges and incorporates by reference each and every allegation contained above.

76.     The Administrative Procedure Act permits a reviewing court, as relevant here, to "hold unlawful and set aside agency, findings, and conclusions found to be—(A) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law[.]".

77.     Agency action is arbitrary and capricious or an abuse of discretion where the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

78.     Petitioner's detention is final agency action reviewable under the APA because it marks the consummation of DHS's decisionmaking process and determines his rights under law.

79.     Petitioner's detention violates the APA in several ways.

80.     Respondents' assertion of authority to subject Petitioner to mandatory detention under § 1225(b)(2)(A) is in excess of statutory authority or limitations, and is ultra vires.

19

81.    Respondents' detention of Petitioner without the individualized determination as to danger and flight risk required by 8 U.S.C. § 1226(a) is an abuse of discretion and without observance of procedure required by law.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1.    Assume jurisdiction over this matter;

2.    Enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court or removing him from the United States pending the resolution of this case, pursuant to the All Writs Act;[3]

3.    Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from custody without any additional restraints on his liberty, including electronic monitoring, and enjoining any re-detention under the immigration laws of the United States, pending a final determination in his removal proceedings;

4.    In the alternative, the Court should conduct a constitutionally adequate, individualized bond hearing for the Petitioner within seven days. If, instead, Respondents are ordered to carry out such a hearing in front of an impartial adjudicator, the Court should direct that at that hearing:

---

[3] *See Local 1814, Intern. Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1237 (2d Cir. 1992) ("Once the district court acquires jurisdiction over the subject matter of, and the parties to, the litigation, the All Writs Act [28 U.S.C. § 1651] authorizes a federal court to protect that jurisdiction" (cleaned up)). *See also* Order, *Ozturk v. Hyde*, No. 25-cv-374 at 68 (WKS) (D.Vt. Apr. 18, 2025), ECF No. 104 (ordering Petitioner's transfer from Louisiana back to Vermont).

20

a.  ICE must bear the burden of establishing by clear and convincing evidence that continued detention is justified;

b.  The adjudicator must meaningfully consider alternatives to imprisonment such as release on recognizance, parole or electronic monitoring; and

c.  The adjudicator must meaningfully consider Petitioner's ability to pay if setting a monetary bond.

5.  Award Petitioner costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

6.  Grant such further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: May 11, 2026                              /s/ Ian Eppler
Jackson Heights, NY                              Ian Eppler
                                                 P.O. Box 720164
                                                 Jackson Heights, NY 11372
                                                 929-256-5505
                                                 ian.eppler@gmail.com

                                                 *Pro Bono Counsel for Petitioner*

**VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242.**

I, Ian Eppler, am submitting this verification on behalf of the Petitioner as an attorney for Petitioner. I am familiar with the events described in the Petition and hereby verify that the statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: May 11, 2026
Jackson Heights, NY

/s/ Ian Eppler
Ian Eppler
P.O. Box 720164
Jackson Heights, NY 11372
929-256-5505
ian.eppler@gmail.com

*Pro Bono Counsel for Petitioner*